UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CHERYL LIKENS, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| vs. § | CIVIL ACTION H-10-155 |
| § | |
| HARTFORD LIFE AND ACCIDENT § | |
| INSURANCE COMPANY, § | |
| § | |
| *Defendant*. § | |

## MEMORANDUM OPINION AND ORDER

This is a removal action wherein plaintiff seeks payment of accidental death benefits under a policy of insurance. Before the court are the parties' cross-motions for summary judgment. Dkts. 10, 11. After consideration of the motions, responses, replies, exhibits, and the applicable law, plaintiff's motion (Dkt. 10) is DENIED and defendant's motion (Dkt. 11) is GRANTED.

### BACKGROUND

Wesley Wood Vincent ("Vincent") fell at his home on the evening of February 23, 2008, and suffered injuries to his cervical spine. Dkt. 1-1 at 10. He died as a result of that injury on February 27, 2008. *Id.* The discharge summary from the hospital listed his cause of death as "anoxic brain injury secondary to cardiopulmonary arrest." *Id.*

Vincent had a group life insurance policy with defendant Hartford Life and Accident Insurance Company ("Hartford"), obtained through Vincent's employer, which provided a benefit for "accidental" death. Dkt. 10-1 at 10. Plaintiff Cheryl Likens is the listed beneficiary on the policy, and she sought payment of the benefits. *Id.* Hartford denied the claim due to Vincent's intoxication at the time of his injury. Dkt. 13-3 at 1-3. More specifically, Hartford relied upon provisions of the Policy requiring that the injury must arise from an accident "independently of all

other causes," and that the policy excludes injuries "sustained as a result of being legally intoxicated from the use of alcohol." Dkt. 13-3 at 1-2. In Hartford's view, Vincent's death was "as a result of being legally intoxicated from the use of alcohol," Vincent therefore "did not suffer bodily injury independent of all other causes," and no benefits were due. *Id*. at 2-3. Plaintiff sued in state court to recover under the policy, and Hartford removed the matter to this court on January 18, 2010, on the basis of diversity of citizenship.

## RELEVANT FACTS

**1.    The insurance policy.**

The insurance policy in this case is a Group Benefits policy issued by Hartford ("Policy"). Dkt. 10 at 12-29. The Policy, which the parties agree was issued in August, 2004, provides for an accidental death and dismemberment benefit for an injury leading to death in the maximum amount of $300,000. Dkt. 12 at 5-9.[1] An "injury" is defined as "bodily injury resulting directly from accident and independently of all other causes which occurs while [Vincent] is covered under the Policy. Loss resulting from: a) sickness or disease . . .; or b) medical or surgical treatment of a

---

[1] Plaintiff asserts that application of other applicable Policy provisions results in a death benefit of $263,500 for Vincent. Dkt. 10 at 30. Hartford asserts that the death benefit available for a covered injury is $250,000. Dkt. 11 at 3. Resolution of this dispute is not necessary to the court's ruling on the pending motions.

sickness or disease; is not considered as resulting from injury." *Id*. at 5. The "Exclusions" section of the Policy provides in relevant part as follows:

> The Policy does not cover any loss resulting from . . . 8. Injury sustained as a result of being legally intoxicated from the use of alcohol. (For residents of Minnesota, Exclusion 8 is deleted and is replaced by the following: 8. Injury sustained while operating a motor vehicle while legally intoxicated from the use of alcohol.)

*Id*. at 6.

**2.     Circumstances of Vincent's death.**

Vincent drank alcohol at a local bar on February 22, 2008, and he arrived back home at approximately 11:30 p.m. Dkt. 12 at 14. An EMS report contains the following description of events:

> [F]amily state that [Vincent] went out drinking tonight and that he was brought home by the bartender around 11 or 11:30. [Vincent's] wife states that [he] was very intoxicated and keep [sic] falling down, she states that she tried to help him, but he told her that he was fine and that he was going to sit out on the porch . . . her granddaughter came home and found [Vincent] between the bbq pit and the hedge . . . she moved him onto his back . . . [and] realized that he was not breathing. . . .

Dkt. 12 at 19. A hospital report confirms that plaintiff reported an initial fall by Vincent, and that she also reported that Vincent was unable to make it from the yard into the house. Dkt. 12 at 26. A sheriff's report for that same incident states that it was Vincent's daughter, Kayla Hutson, who later found him on the ground, but she reported she was "not alarmed [be]cause this was a regular occurrence." Dkt. 12 at 32. Vincent was transported to the hospital, and his serum blood alcohol content shortly after the incident was reported as being .328 mg/dl. *Id*. at 16. He never regained consciousness, and his life support was removed on February 27, 2008. Dkt. 12 at 37. The cause of death was reported as "anoxic brain injury secondary to cardiopulmonary arrest." *Id*.

3

A Certificate of Death dated March 17, 2008, lists the "immediate cause" of his death as "complications following blunt trauma with fracture of cervical spine," and the "manner of death" is listed as "accident." Dkt. 10 at 32. Also listed under "significant conditions contributing to death but not resulting in the underlying cause" is "chronic ethanolism." *Id*.

## ANALYSIS

### I. Summary Judgment

A timely motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). Upon a defendant's motion for summary judgment, the plaintiff "must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." FED. R. CIV. P. 56(e). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden

does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required. *Id.*

"For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting FED. R. CIV. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of

5

proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Amer. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

## II. Contract Interpretation

"Texas courts interpret insurance policies according to the rules of contract construction." *de Laurentis v. U.S. Auto. Ass'n*, 162 S.W.3d 714, 721 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). The primary objective of the court is to ascertain the parties' intent, as expressed in the written instrument. *See Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). "[T]he parties' intent is governed by what they said, not by what they *intended* to say but did not." *Nautilus Ins. Co. v. Country Oaks Apartments, Ltd.*, 566 F.3d 452, 455 (5th Cir. 2009) (quoting *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006)) (internal quotation omitted).

If an insurance policy is worded so that it can be given a definite meaning or certain legal meaning, then the policy is not ambiguous and is construed by the court as a matter of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). An ambiguity exists where a policy is susceptible to more than one meaning. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Courts interpreting contractual provisions give terms their plain, ordinary, and generally accepted meanings, unless otherwise defined by the parties. "'Both the insured and the insurer are likely to take conflicting views of coverage, but neither conflicting expectations nor disputation is sufficient to *create* an ambiguity.'" *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. U.S. Liquids, Inc.*, 271 F. Supp. 2d 926, 932 (S.D. Tex. 2003) (quoting *Forbau*, 876 S.W.2d at 134). "[I]f, and only if, the court finds an ambiguity in the contract provisions, particularly in exclusionary clauses, the court should construe the policy strictly against the insurer." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,

271 F. Supp. 2d at 932; *see also Waffle House, Inc. v. Travelers Indem. Co. of Ill.*, 114 S.W.3d 601, 607 (Tex. App.—Ft. Worth 2003, pet. denied) (cautioning that exclusionary provisions "must be clearly expressed and must not be ambiguously worded"). And, "if the insured's construction of an exclusionary provision is reasonable, it must be adopted, even if the insurer's construction is more reasonable." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 271 F. Supp. 2d at 931.

Under Texas law, an insured has the burden of establishing coverage under the terms of an insurance policy. *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010). If the insured proves coverage, then to avoid liability the insurer must prove that the loss is within an exclusion. *Id*. If the insurer proves that an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within coverage. *Id*.

## III. Application

In this case, no reasonable jury could find facts that would avoid the intoxication exclusion of the Policy.[2] The facts of this case clearly establish that Vincent's intoxication on the night he fell in his front yard is the proximate cause of his death, and this prevents plaintiff from recovering under the Policy.

"The Policy does not cover any loss resulting from . . . [i]njury sustained as a result of being legally intoxicated from the use of alcohol." Dkt. 12 at 6. Hartford's evidence conclusively establishes that the injuries Vincent sustained on February 23, 2008, and which led to his death, were caused by his extreme intoxication. Plaintiff asserts that the autopsy report on Vincent's body

---

[2] The court will not, therefore, address Hartford's argument that plaintiff failed to establish that Vincent's death was caused by an accident independent of other causes.

discounts alcohol consumption as a cause of his death. Plaintiff's argument is premised upon a form where "chronic ethanolism" is listed in box pre-labeled for "significant conditions contributing to death but not resulting in the underlying cause." Dkt. 10 at 32. A review of the more complete report of the findings, however, reveals that the medical examiner made no finding that intoxication did not cause the injuries. Dkt. 13-1 at 2-9. In fact, the medical examiner's notes reflect that the "blunt force trauma" occurred because "[d]ecedent fell at home while intoxicated and hit his head on a barbecue pit." *Id*. at 9. Thus, the medical examiner did not make any finding that would permit a jury to conclude that intoxication did not cause Vincent's injuries. Indeed, such a finding is compelled by the record evidence.

The sole question remaining, then, is one of interpretation of the exclusion at issue. More specifically, what is meant by the term "legally intoxicated" as used in the Policy? Plaintiff asserts that this language is ambiguous and, accordingly, presents her own proposed definition. There is no challenge to whether Vincent met the legal definition in terms of the level of his intoxication. Indeed, the record reflects that Vincent was approaching the level of blood alcohol content that is considered medically "toxic." Dkt. 12 at 16. Rather, plaintiff points to Hartford's reliance in its briefing on the definition of legal intoxication from the Texas Penal Code, and asserts that "legal intoxication" therefore necessarily requires that Vincent be not only intoxicated, but intoxicated in a legally relevant fashion. Dkt. 10 at 9. More specifically, the exclusion would only apply in plaintiff's view if Vincent were driving, or otherwise "operating a motor vehicle, motorboat or vessel" in violation of Texas law. *Id*.

Hartford responds that there is no indication in the Policy that intoxication must involve a violation of Texas law, or that operation of a motor vehicle is required for such a finding. Indeed,

Hartford is correct. In fact, the exclusion at issue is immediately followed in the Policy by an alternate version of the exclusion applicable only in Minnesota and which specifically limits the exclusion to injuries sustained while "operating a motor vehicle while legally intoxicated from the use of alcohol." Dkt. 12 at 6. Thus, there is no support for plaintiff's argument in the language of the Policy itself.

> For purposes of Texas law, "intoxicated" is defined as:
>
> (A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; **or**
>
> (B) having an alcohol concentration of 0.08 or more.

V.T.C.A., Penal Code § 49.01 (emphasis added). While Hartford relies upon this definition, drawn from the Texas Penal Code, for purposes of establishing a definition of "legal intoxication" in the Policy exclusion, Hartford points out that Texas law also provides for similar definitions of "intoxicated" for determining issues in workers' compensation cases, Tex. Labor Code § 401.103, and for determining when a customer may no longer be served alcoholic beverages. Tex. Admin. Code § 50.2. This broad application of the definition of "intoxicated" in Texas law distinguishes cases such as *MacDonald v. Unicare Life & Health Ins. Co.*, No. 3:07-0345, 2008 WL 169142 (S.D. W.Va. Jan. 18, 2008) and cases cited therein where the state law referenced in, or applicable to, a policy exclusion required an adjudication or a finding that the intoxication was actually in violation state law. Here, Texas defines "intoxicated" in more than just a criminal context, and the court finds no basis to read into the Policy such an additional provision.

Not every difference in interpretation of an insurance policy amounts to an ambiguity. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 465 (Tex. 1998). Here, the court does not perceive an ambiguity in the Policy as written. The exclusion applies if Vincent's death was caused by his being "legally intoxicated," i.e., being "intoxicated" as that term is defined in Texas law. Texas law provides a uniform definition of "intoxicated" that Vincent easily met at the time he fell and struck his head.

And, in any event, even if some ambiguity existed in the exclusionary language, an insured's construction of the exclusion will only be adopted if it is reasonable. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 271 F. Supp. 2d at 931. In this case, there is simply no basis for reading into the Policy exclusion an additional requirement that Vincent not only be impaired as described in Texas law, but that he also have been committing a crime.

Finally, plaintiff argues in the alternative that it is improper to utilize a definition of intoxication drawn specifically from the Texas Penal Code unless there was an express adoption of that standard in the Policy. This is a potential ambiguity, however, that does not benefit plaintiff. A contractual clause that is ambiguous as applied to certain facts may be unambiguous as applied to others. *State Farm Fire and Cas. Co. v. Vaughan*, 968 S.W.2d 931, 934 (Tex. 1998). Vincent met **any** definition of "intoxicated" during the relevant time frame. Choosing one that differs slightly from the one found in the Texas Penal Code would not avail plaintiff in this case.

## CONCLUSION

After consideration of the motions, responses, replies, exhibits, and the applicable law, plaintiff's motion for summary judgment (Dkt. 10) is DENIED, and defendant's motion for summary judgment (Dkt. 11) is GRANTED.

Signed at Houston, Texas on June 29, 2011.

_____
Gray H. Miller
United States District Judge